## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

TIMOTHY J. HANSEN,

                Petitioner,

     v.

BRENT REINKE,

                Respondent.

Case No. 1:03-cv-00212-EJL

**MEMORANDUM DECISION AND ORDER**

      Pending before the Court is Respondent's Motion for Partial Summary Dismissal. (Dkt. 55.) Petitioner has filed a Response (Dkt. 62), and Respondent has filed a Reply. (Dkt. 63.) Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d).

      For the reasons set forth below, the Court will grant Respondent's Motion in part and deny it in part. Claim One (A) is dismissed as failing to state claim on which relief may be granted in this proceeding. Claims One (B) and (C), Two (A) and (B), Three (B),

**MEMORANDUM DECISION AND ORDER - 1**

and Five will be dismissed as procedurally defaulted. Claims Three (A) and (C), Four, and Six will not be dismissed at this time.[1]

## BACKGROUND

**1.      Circumstances Leading to Arrest and Search of Petitioner's Residence**

In June of 2001, the Idaho State Police (ISP) was conducting surveillance on the residence of Jerry Windle, located at 7695 Pocatello Creek Road, in Bannock County, Idaho, which they suspected contained a methamphetamine operation. (State's Lodging B-10, p. 1.) Timothy Hansen ("Petitioner") lived in a bus parked next to Windle's main residence. (*Id.*)

At about 2:00 p.m. on June 7, Officers saw Petitioner leave the Windle residence. (State's Lodging B-1, p. 1.) They stopped his car pursuant to a felony arrest warrant issued by Box Elder County, Utah, and also because he was driving without privileges. (*Id.*) Officers arrested Petitioner at gunpoint, but without incident, before handcuffing him and placing him in the back of a patrol car. (*Id.* at 2.)

Without informing Petitioner of his *Miranda* rights,[2] Detective John Ganske told him that ISP believed that methamphetamine was being produced at 7695 Pocatello Creek Road, and Ganske asked Petitioner whether he knew anything about that. (State's Lodging B-1, p. 2.) Petitioner denied knowledge of a meth lab and he refused to consent

---

[1] For ease of reference, the Court will use Respondent's nomenclature for the claims and subclaims raised in the Amended Petition.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**MEMORANDUM DECISION AND ORDER - 2**

to a search of the bus or the house. (*Id.*) Petitioner was then alone in the patrol car for up to 50 minutes while Ganske searched Petitioner's vehicle. (*Id.*)

Ganske returned and inquired whether Petitioner had any particular tow company that he wanted to tow his vehicle. (State's Lodging B-2, p. 2.) Petitioner asked that his vehicle not be towed, and he then had a conversation with Ganske about possible terms for a search of the bus, terms to which officers agreed (which included only looking at items in plain view), and he signed a consent-to-search form. (*Id.*)

Officer John Kempf saw enough evidence in and around the bus to suspect that methamphetamine was being manufactured on the Windle property. (*Id.*) The ISP then obtained a search warrant for the entire premises, and they found a meth lab inside the residence. (*Id.*)

On October 3, 2001, the prosecutor in Bannock County charged Petitioner with conspiracy to traffic in methamphetamine by manufacturing, pursuant to Idaho Code § 37-2732B(a)(3) and 37-2732(f). (State's Lodging A-1, pp.18-20.)

## 2.    Pretrial Proceedings, Trial, and Direct Appeal

Petitioner filed a motion to suppress all evidence that was found during the warrantless search of his bus and during the search with a warrant of the Windle property, asserting that his consent to search was obtained by duress. (*Id.*, pp.44-45.) The trial court held an evidentiary hearing on the motion, which it denied. (State's Lodging A-2, pp.1-49.) The State later filed an amended information charging only conspiracy to

**MEMORANDUM DECISION AND ORDER - 3**

manufacture (not to traffic) methamphetamine. (State's Lodging A-1, pp.53-55; State's Lodging A-2, pp.48-49.)

The case proceeded to a jury trial. (State's Lodging A-2, pp.50-439.) Petitioner was convicted of the charged offense, and was sentenced to ten years fixed with five years indeterminate. (State's Lodging A-1, pp.65-67.)

Petitioner filed a direct appeal, challenging denial of his motion to suppress under the Fourth Amendment, arguing that (1) his consent to search his home (the bus) was coerced because he was in custody and was not first given a *Miranda* warning; and (2) that his consent was involuntary and the warrantless search was unreasonable. (State's Lodging B-7, p. 6.) The Idaho Supreme Court rejected Petitioner's arguments, concluding that consent was voluntary and not obtained in violation of *Miranda*, because Petitioner "initiated a conversation regarding his willingness to consent to a search of his home in order to avoid, among other things, his car being towed." (State's Lodging B-10, pp.4-6.) In addition to Petitioner initiating the conversation, the Idaho Supreme Court noted that Petitioner signed the consent-to-search form that placed limits on the search, and Petitioner was advised that he could terminate the search at any time. (*Id*., p. 6.)

## 3.     Petitioner's Motion to Compel and First Motion to Dismiss Based on a Videotape of the Stop and Arrest

While his direct appeal was pending, Petitioner filed a motion to compel the prosecutor to provide Petitioner with a copy of the police videotape of his vehicle stop and arrest. (State's Lodging C-1, pp.3-4.) After the trial court ordered the prosecutor to

**MEMORANDUM DECISION AND ORDER - 4**

provide Petitioner's attorney with the videotape or to file an affidavit explaining why the video tape was unavailable, (*id*., p.5), the prosecutor filed an affidavit denying knowledge of the existence of a videotape. (*Id*., pp.9-10.) However, one year later, the prosecutor found and produced a copy of the videotape. (State's Lodging D-2(a), Motion to Dismiss Conviction, p. 2.)

Petitioner next filed a "Motion to Dismiss Convictions" and requested a new trial based on the prosecutor withholding and failing to disclose the videotape prior to the first trial. (State's Lodging D-2(a).) The trial court held a hearing (State's Lodging C-3), and then denied the motion, concluding the videotape was "immaterial with respect to the jury verdict in this case." (State's Lodging C-1, pp.18-19.)

On appeal, Petitioner argued that the trial court abused its discretion in denying the motion and that, had the videotape not been withheld, "the outcome of the suppression motion would have been different and, therefore, the outcome of the trial would have been different." (*Id*., p.14.) In affirming the district court's decision, the Idaho Court of Appeals relied upon Idaho Code § 19-2406 and *State v. Drapeau*, 551 P.2d 972, 978 (Idaho 1976) (governing requests for a new trial based upon newly discovered evidence). The Court of Appeals  concluded that because "the videotape does not show that Hansen was 'interrogated' by the officers when they returned to the patrol car and conversed with him," Petitioner's allegation of a *Miranda* violation was without merit, and any suppression motion would have failed. (State's Lodging D-7, pp.4-5.) The Idaho Court of Appeals also refused to address Petitioner's allegations of prosecutorial misconduct,

**MEMORANDUM DECISION AND ORDER - 5**

because it is not one of the grounds for a motion for new trial designated in I.C. §

19-2406. (State's Lodging D-7, p.3 n.2.)

Petitioner raised the same issues before the Idaho Supreme Court in his

petition for review, which was denied. (State's Lodgings D-6 to D-9.)

**4.      Second Motion to Dismiss Based on the State's Use of an Agent to Elicit**

**Incriminating Statements**

While the appeal of his first motion to dismiss was pending, Petitioner filed a *pro*

*se* second motion to dismiss, with various attachments, in the trial court. (State's Lodging

F-2.) The basis of the motion was that former county jail inmate James Burt was acting as

a state agent when he heard Petitioner make incriminating statements while they were in

custody together, and that the prosecutor knowingly presented false testimony when Burt

testified at trial. (State's Lodging E-1, pp.1-5). The trial court construed Petitioner's

second motion as a post-conviction relief application, and then denied relief because the

application was untimely and alleged no material facts that would support post-conviction

relief. (*Id.*, pp.7-10.)

Petitioner filed an appeal, but the case was remanded upon motion of, and by

consent of, the parties because the trial court had erred in construing the second motion to

dismiss as a post-conviction application instead of a motion for new trial. (State's

Lodgings F-1 to F-9.) On remand, the trial court held a hearing and then denied

Petitioner's second motion to dismiss, again relying on I.C.R. 34, I.C. § 19-2406 and

*Drapeau*. (State's lodging E-2, pp.128, 140; E-3.) The trial court found that Petitioner had

**MEMORANDUM DECISION AND ORDER - 6**

presented evidence "that the State recruited Burt to get information from Hansen while Hansen was in jail" (*id*., p.141), but, importantly, the court concluded that the "evidence does not show that Burt took any affirmative action to elicit incriminating statements from Hansen," and, thus, Petitioner's Sixth Amendment rights were not violated. (Id., pp.140-43). In addition, the trial court again addressed the videotape of Petitioner's arrest and concluded that it was not newly discovered evidence that warranted a new trial under *Drapeau*. (*Id*., pp.143-45.) The second motion to dismiss was denied, and Petitioner then filed a notice of appeal. (*Id*., pp.153-56.)

5.      **Post-Conviction Relief Actions**

In 2004, while the second motion to dismiss was still pending, Petitioner filed a post-conviction relief application raising a multitude of claims, including claims of ineffective assistance of counsel. (State's Lodging G-1, pp. 1-49.) After the State responded, the trial court issued a notice of intent to dismiss a claim regarding sufficiency of the evidence, but stayed the remaining claims pending completion of Petitioner's other actions. (*Id*. at 122-25.) After the case was re-opened, the court dismissed all claims. (*Id*. at 221-29.)

The appeals of the denial of the second motion to dismiss after remand and the denial of the post-conviction application were initially consolidated before the Idaho Supreme Court, but Petitioner filed a motion to voluntarily dismiss the appeal from the denial of the second motion to dismiss. (State's Lodgings F-14, F-15.) The Idaho Supreme Court granted the motion, leaving only the appeal from the post-conviction

**MEMORANDUM DECISION AND ORDER - 7**

action. (State's Lodging F-16). After Petitioner filed his opening brief, the State sought to remand the case because the trial court failed to provide him an opportunity to respond to the reasons for dismissal. (State's Lodging H-3.) The State's motion was granted, and the case was remanded. (State's Lodging H-4.)

During the pendency of these appeals, Petitioner also filed a second post-conviction application in the trial court. (State's Lodging I-1, pp.1-21.) The trial court issued a notice of intent to dismiss the second application. (*Id.*, pp.22-29.)

The parties entered into a stipulation to complete the post-conviction cases based on briefing and documents submitted by the parties rather than an evidentiary hearing. (Stage's Lodging I-1, pp.77-79.) On September 24, 2008, the trial court dismissed all of the claims in both post-conviction applications. (*Id*., pp.201-24.)

## 6.      Appeal of Both Post-Conviction Actions

Petitioner filed a notice of appeal, and was appointed new counsel. (State's Lodging I-1, pp. 230-32.) On appeal, Hansen raised the following issues: (1) whether the state district court erred by dismissing the ineffective assistance of counsel claims; (2) whether the district court erred by dismissing the prosecutorial misconduct claim regarding failure to disclose the videotape of the traffic stop; (3) whether the appellate court should  revisit its previous ruling on the *Miranda* issue; (4) whether there was sufficient evidence of violation of *Massiah v. United States*, 377 U.S. 201(1964), to justify further proceedings; and (5) whether there was sufficient evidence to justify further proceedings to permit Petitioner to develop his *Napue* claim regarding Burt

**MEMORANDUM DECISION AND ORDER - 8**

allegedly lying about his motivation for testifying to justify further proceedings. (State's Lodging J-1, p.3)

The ineffective assistance claim contained the following subparts: (A) failing to obtain the transcript of Burt's testimony from a previous trial or impeach Burt with prior inconsistent statements; (B) failing to obtain an accomplice testimony instruction as to Burt; (C) failing to use a police report allegedly containing exculpatory evidence; (D) failing to move to suppress jailhouse statements; and (E) the cumulative effect of counsel's alleged "shortcomings and errors." (*Id.*, pp.5-15.)

Petitioner's appellate counsel withdrew the *Massiah* and *Miranda* claims at oral argument. (State's Lodging J-4, p.6 n.3.) The Idaho Court of Appeals resolved the remaining issues, affirming the state district court's decisions. (State's Lodging J-4.)

Petitioner next filed a petition for review with the Idaho Supreme Court, challenging only the  denial of the ineffective assistance of counsel, prosecutorial misconduct, and *Napue* claims. (State's Lodging J-7.) The Idaho Supreme Court denied the petition, and the remittitur issued September 23, 2010, concluding the last of Petitioner's state court matters challenging his conviction and sentence. (State's Lodging J-9.)

**7.     The Federal Habeas Corpus Action**

The federal Petition for Writ of Habeas Corpus was filed in the midst of Petitioner's state court actions (and over seven years before the conclusion of his final state court matter) on May 27, 2003. (Dkt. 3.) The Court granted a stay of the case until

**MEMORANDUM DECISION AND ORDER - 9**

the state court matters were concluded. (Dkt. 12.) After the state court actions were completed and the stay in this action was lifted, Petitioner filed an Amended Petition in 2011. (Dkt. 46.)

In his Amended petition, Petitioner alleges:

| | |
|---|---|
| Claim One (A) | Illegal search and seizure "when the Idaho State Police coerced his consent to search the property where the evidence was found in violation of the Fourth Amendment." (Dkt. 46, p. 9.) |
| Claim One (B) | Violation of the Fifth Amendment "when he was illegally interrogated on the side of the road after being arrested and the State Police failed to advise him of his Miranda Rights." (Dkt. 46, p. 9.) |
| Claim One (C) | Violation of the Fourteenth Amendment "when the statements from the illegal interrogation as well as the evidence found on the Windell property was used against him at his trial." (Dkt. 46, p .9.) |
| Claim Two (A) | "[T]he State deliberately tried to suppress the videotape of Hansen's June 7, 2001 stop and arrest" violating the Fourteenth Amendment and *Brady*." (Dkt. 46, pp.16-22); |
| Claim Two (B) | The prosecutor suborned perjury when he allegedly presented false testimony regarding the existence of the videotape violating *Napue*. (Dkt. 46, pp.16-22.) |
| Claim Three (A) | Use of jailhouse informant Burt, who allegedly took action to elicit statements from Hansen in violation of his Sixth Amendment rights. (Dkt. 46, pp. 23- 29.) |
| Claim Three (B) | Informant Burt receiving favorable treatment after he testified in violation of *Brady*. (Dkt. 46, p. 25.) |
| Claim Three (C) | Burt allegedly testifying falsely regarding his motive to testify in violation of *Napue*.  (Dkt. 46, p. 26.) |

**MEMORANDUM DECISION AND ORDER - 10**

| Claim Four (A) | Ineffective assistance of counsel for failing to obtain a transcript of Burt's testimony from the Steven King trial or impeach Burt's testimony with prior inconsistent statements (Dkt. 46, pp. 32-34.) |
|---|---|
| Claim Four (B) | Ineffective assistance of counsel for failing to obtain an accomplice instruction as to Burt (Dkt. 46, pp. 34-37.) |
| Claim Four (C) | Ineffective assistance of counsel for failing to properly use the report of Detective Charles Broody. (Dkt. 46, pp. 38-40.) |
| Claim Five | Suppression by the State of the videotape. (Dkt. 46, pp. 42-51.) |
| Claim Six | Failing to correct Burt's testimony regarding his motivation for testifying in violation of *Napue*. (Dkt. 46, pp. 51-56.) |

Respondent requests dismissal of Claim One as a threshold Fourth Amendment claim that is barred as a result of its full litigation in state court, and also requests dismissal of the following claims on the basis of procedural default: One (B) and (C), Two (A), Two (B), Three (A), Three (B), and Five. Respondent does not seek dismissal of Claim Three (C), Claim Four, or Claim Six.

The Motion for Partial Summary Dismissal is fully briefed and ripe for adjudication. (Dkt. 55, 61, 63.)

## RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the

petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

1.     **Claim One - Fourth Amendment**

     A.     *Standard of Law*

Claim One is a Fourth Amendment search and seizure claim, which is treated differently from other types of federal habeas corpus claims. The threshold issue on federal habeas corpus review is whether the state provided the petitioner an opportunity for full and fair litigation of his Fourth Amendment claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). If the federal district court determines that full and fair litigation of the claim took place in state court, then it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment. *Id*.

A federal district court must first "inquire into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims." *Sanna v. Dipaolo*, 265 F.3d 1, 8-9 (1st Cir. 2001) (internal citation omitted). If the court determines that the state court procedures are adequate, the inquiry generally ends there. *Id*. That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims." *Id*. at 9. Stated another way, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether

**MEMORANDUM DECISION AND ORDER - 12**

the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

**B.**     *Discussion*

As detailed above, Petitioner filed a motion to suppress because Petitioner contended that his consent to search was obtained by duress. (State's Lodging A-1, pp.44-45.) Petitioner filed a supporting affidavit and brief with his motion, where he alleged that he was arrested and never advised of his *Miranda* rights (State's Lodgings B-5; B-6). The trial court held an evidentiary hearing on the suppression issue, allowing Petitioner to present witnesses, evidence, and argument. (State's Lodging A-2, pp.1-49.) Based upon the evidence presented, the state district court concluded that there was no coercion and that the search was consensual. (*Id.*, p.46.) Petitioner had counsel to represent him during all state district court proceedings regarding this issue.

With the assistance of new counsel, Petitioner appealed the trial court's resolution of the Fourth Amendment issue, along with sentencing issues. (State's Lodging B-7.) The Idaho Supreme Court rejected the claim, concluding that *Miranda* warnings were not required because Petitioner, though in custody, was not subject to an interrogation and, moreover, that his consent to search his residence was voluntary under the circumstances. (State's Lodging B-10, pp. 4-6.)

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner argues that he was denied a full and fair opportunity to litigate his Fourth Amendment claims because the State withheld the videotape of his traffic stop and arrest and proffered untruthful evidence at the suppression hearing. He argues that he was denied due process of law because he should have been granted a new suppression hearing. Particularly, he argues that the trial court ignored his numerous requests for disclosure of the videotape and held the suppression hearing without it.

Petitioner made arguments similar to these in his motion for new trial in state court after the videotape was discovered and disclosed. In that proceeding, the trial court concluded that the new evidence was immaterial to the jury's verdict and would not have likely produced an acquittal. (State's Lodging D-7, p. 3.) The Idaho Court of Appeals affirmed, remarking that "[a] consent to search is not a self-incriminating statement, and, thus, *Miranda* warnings are not required prior to requesting consent." (*Id*. at 5.) The Court of Appeals concluded that Petitioner "has failed to show that his motion to suppress would have been granted and the outcome of the trial would have been different had the videotape been disclosed." (*Id*.) In reaching its conclusion, the Court reviewed the videotape and determined that it did not show that Petitioner was "interrogated" by the officers but that he instead "negotiated" a deal with them to prevent his vehicle from being towed. (*Id*.)

The Court finds that Petitioner had an adequate opportunity in hearings and on appeal, with the aid of counsel, to address both the legal and factual bases of his

**MEMORANDUM DECISION AND ORDER - 14**

suppression and withheld evidence claims in state court. The Fourth Amendment issues cannot be adjudicated again in this habeas corpus matter, pursuant to *Stone v. Powell*.

However, Respondent lumps Claims One (A), (B), and (C) together as all containing Fourth Amendment issues that must be dismissed under *Stone*. (Dkt. 55-1, p. 10.) The Court agrees that Claim One (A) is such an issue and it will be dismissed on that basis. But in Claim One (B) Petitioner alleges a violation of the Fifth Amendment "when he was illegally interrogated on the side of the road after being arrested and the State Police failed to advise him of his *Miranda* Rights." (Dkt. 49, p. 6.) The Court liberally construes this allegation as raising a Fifth Amendment claim that is not subject to the *Stone* doctrine. *See Withrow v. Williams*, 507 U.S. 680, 683 (1993). Likewise, in Claim One (C), he asserts a violation of the Fourteenth Amendment "when *the statements from the illegal interrogation* as well as the evidence found on the Windell property was used against him at his trial." (*Id.*) (emphasis added). The Court reaches the same conclusion as to Claim One (C).

Accordingly, Claim One (A) will be dismissed as non-cognizable in this habeas corpus matter. Claims One (B) and (C) are cognizable and will not be dismissed under *Stone*, but they will be dismissed as procedurally defaulted, as discussed below.

**2.     Procedural Default: Claims One (B) and (C), Two (A), Two (B), Three (A), Three (B), and Five.**

      **A.     *Standard of Law Governing Procedural Default***

**MEMORANDUM DECISION AND ORDER - 15**

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3)  when the Idaho courts have rejected a claim on

**MEMORANDUM DECISION AND ORDER - 16**

an independent and adequate state procedural ground. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

**B.** **The Alleged *Miranda* Violation and Involuntary Consent Claims: Discussion of Claims One (B) and (C)**

Claims One (B) and (C) are that Petitioner was denied (1) his Fifth Amendment right to be free from illegal interrogations and (2) his Fourteenth Amendment right to be free from having the statements from the illegal interrogation and other evidence found on the Windle property used against him at his trial. (Dkt. 46, p. 9.) Respondent argues that these two sub-claims are procedurally defaulted because they were never raised as substantive, independent Fifth and Fourteenth Amendment claims apart from the Fourth Amendment claim raised as Claim One (A). Particularly, Respondent argues that, to be properly exhausted, the claims should have been raised as a Fifth or Fourteenth Amendment claim challenging the actual interrogation and the admission at trial of any statements from the interrogation.

The Court agrees. While Petitioner claimed during the direct appeal and in the appeal after the videotape was disclosed that his rights under *Miranda* had been violated, the entire focus of his argument was that the supposed *Miranda* violation and other coercive circumstance led to an involuntary consent to search, meaning that the *physical evidence* that was found during the subsequent searches should have been excluded from evidence. Specifically, on direct appeal, he argued that "evidence derived from that

**MEMORANDUM DECISION AND ORDER - 17**

consensual search was not voluntarily given under the circumstances, and must result in the suppression of that evidence" and that "the spoils from the unlawful consent should have been suppressed." (State's Lodging B-7, pp. 9, 17.) During the appeal from the denial of the motion for new trial, he alleged that the newly disclosed videotape of the encounter now supported his argument about the *Miranda* violation and the involuntary consent. (State's Lodging D-3, p. 19.) On those occasions, Petitioner did not assert the same legal theory or ask for the same type of relief that he seeks, at least in part, here; namely, that both the physical evidence *and his incriminating statements* should have been suppressed because of a Fifth Amendment violation.

It was not until the post-conviction action that Petitioner first raised a claim that a *Miranda* violation resulted in incriminating statements – essentially Petitioner's admission that he lived in or stayed at the bus on the Windle property – that should have been suppressed. (State's Lodging J-1, p. 20.) But Petitioner's counsel withdrew this issue during the oral argument, and it was not addressed by the Idaho Court of Appeals. (State's Lodging J-4, p. 6, n.3.)

Therefore, the Court concludes that Petitioner never raised an independent or "freestanding" Fifth or Fourteenth Amendment claim to the Idaho Supreme Court alleging that he made incriminating statements, flowing from an unlawful interrogation, that should have been suppressed at the criminal trial. As a result, Claims One (B) and (C) were not fairly presented to the Idaho Supreme Court, and it is now too late to do so, these subclaims are procedurally defaulted.

**MEMORANDUM DECISION AND ORDER - 18**

**C.**     ***The Brady and Napue Claims Based on the Withholding of the***

   ***Videotape: Discussion of Claims Two (A), Two (B), and Five***

Claim Two (A) is that the State violated Petitioner's Fourteenth Amendment

rights by withholding the videotape of his stop and arrest in violation of *Brady* (Dkt. 46,

pp. 16-22); Claim Two (B) is that the State presented false testimony regarding the

existence of the videotape in violation of *Napue.* (Dkt. 46, pp.16-22.) In related Claim

Five, Petitioner again asserts a *Brady* violation based on the suppression of the videotape

because the videotape could have been used to impeach police officers. (Dkt. 46, pp. 42-

51.)

Petitioner argues that the first two claims were raised in his first Motion to

Dismiss. (Dkt. 46, p.16.) Respondent counters that the arguments on appeal regarding the

Motion to Dismiss were based upon I.C. § 19-2406 and I.C.R. 34, and not the federal

constitution. (State's Lodgings D-3; D-6.) Respondent also points out that the Idaho Court

of Appeals refused to address any claims of prosecutorial misconduct because Idaho law

does not permit such a claim to be raised under the guise of a motion for new trial.

(State's Lodging D-7, p.3 n.2.)

While the Court finds that Petitioner fairly presented a constitutional claim under

*Brady* (but not *Napue*) in his appellate brief in that proceeding, in which he alleged that

the tape was favorable evidence and that the State's failure to disclose it violated his right

to due process of law (State's Lodgings D-3, p. 42, D-6, p. 29), the Idaho Court of

Appeals chose not to address the claim on its merits because of a state court procedural

**MEMORANDUM DECISION AND ORDER - 19**

rule. (State's Lodging D-7, p. 3 n.2.) The Court of Appeals characterized the claim as raising "allegations of prosecutorial misconduct," which it noted "are not among the grounds for a new trial provided by I.C. § 19-2406 [the statute governing motions for new trial]." (*Id.*) It noted that such claims should instead be made in post-conviction relief actions. (*Id.*) Though Petitioner reasserted the *Brady* issue in his petition for review (State's Lodging D-6, p. 29), the Idaho Supreme Court denied review without comment, meaning that the Idaho Court of Appeals procedural ruling is the controlling decision on this issue.

A long line of Idaho cases supports the proposition that prosecutorial misconduct claims cannot be brought in a motion for new trial, demonstrating that this procedural bar is regularly and consistently applied in Idaho, and, thus, is an adequate procedural bar. *See State v. Carlson*, 3 P.3d 67, 76 (Idaho Ct. App. 2000) ("Although in certain circumstances prosecutorial misconduct may be properly raised in an application for post-conviction relief, allegations of prosecutorial misconduct at trial are not among the grounds for a new trial provided by I.C. § 19-2406."); *State v. Jones*, 903 P.2d 67, 70 (Idaho 1995) (The Court has consistently recognized that [I.C. § 19-2406] is a legitimate exercise of the legislature's power to define the substantive law of this state, and sets out an exclusive list of the grounds for a new trial."); *State v. Weise*, 75 Idaho 404, 410, 273 P.2d 97, 100 (1954) ("The grounds for new trial are purely statutory. The court cannot provide any other ground.").

Petitioner was certainly not without a remedy at state law for these claims; he could raise such claims in a post-conviction action, as the Idaho Court of Appeals noted in its opinion. In fact, he did raise *Brady* and *Napue* claims in the post-conviction matter. In the district court, he alleged that his right to due process was violated under *Brady* when the videotape was withheld because the videotape could have impeached Detective Ganske.  On appeal, however, he contended that the videotape could have impeached Detective Kempf. The Idaho Court of Appeals declined to review the merits of the claim because the post-conviction "court did not rule on any issue with respect to Kempf's credibility," and the issue "was never presented to the district court for consideration." (State's Lodging J-4, p. 16.) Petitioner had not called into question this procedural bar, and Respondent has carried his burden to show that it is regularly and consistently applied.[3]

Accordingly, the Court concludes that Claims Two (A), Two (B), and Five are procedurally defaulted, for failure to properly present them to the Idaho Supreme Court, and that no avenue remains open to do so.

**D.     *James Burt as a State's Witness: Discussion of Claims Three (A) and Three (B)***

Claim Three (A) is that the State's use of James Burt to elicit incriminating information from Petitioner violated his Sixth Amendment right to counsel under *Massiah*

---

[3] Petitioner also raised and exhausted a *Napue* claim in the state post-conviction matter related to the State's use of James Burt's testimony that is not at issue in Respondent's Motion (Claim Three (C)).

*v. United States*, 377 U.S. 201 (1964). (Dkt. 46, pp.23-29.) Claim Three (B) is yet another *Brady* claim, based on the allegation that the prosecutor withheld information that Burt allegedly received favorable treatment after he testified, establishing that his motive for testifying was different from his trial testimony on that topic. (Dkt. 46, p.25.)

Petitioner contends these two sub-claims were raised in his second "Motion to Dismiss Convictions." (Dkt. 3, p.23.) Petitioner initially appealed the denial of this post-judgment motion (State's Lodging E-1, pp.16-18), but the appeal was remanded because the trial court erred by treating the motion as a post-conviction petition. (State's lodgings F-8; F-9.) The court later denied relief. (State's Lodgings E-3; E-2, pp.128-46). Petitioner filed a notice of appeal, but then moved to dismiss the appeal from the denial of his second motion to dismiss, which the Idaho Supreme Court granted. (State's Lodgings F-15, F-16.) Therefore, the claims were not fairly presented to the Idaho Supreme Court for a ruling on the merits in that proceeding.

While a *Massiah* claim was raised in Petitioner's brief regarding denial of his post-conviction cases (State's Lodging J-1, p.20), at oral argument his attorney withdrew the claim because, "based upon the procedural posture of the case, [the] claim[] [was] barred." (State's Lodging J-4, p.6 n.3.) In addition, the *Massiah* claim was not raised in Petitioner's petition for review briefing before the Idaho Supreme Court. (State's Lodging J-7.)

Also in his post-conviction appeal, Petitioner raised a *Napue* claim, not a *Brady* claim, regarding Burt's motive to testify, and Respondent does not seek dismissal of the

**MEMORANDUM DECISION AND ORDER - 22**

*Napue* claim here (Claim Three (C)). (State's Lodgings J-1, pp.21-24; J-7, pp.21-25). The *Brady* claim that was raised in the post-conviction matter was not related to Burt – it was based on the withholding of the videotape – and this Court has already found that claim (Claim Five) to be procedurally defaulted for the reasons given above. (State's Lodgings J-1, pp.15-19; J-7, pp.17-21.)

Based on the foregoing, the Court concludes that Claims One (B), One (C), Two (A), Two (B), Three (A), Three (B), and Five are now procedurally defaulted and will be dismissed from this proceeding unless Petitioner can excuse the default.

## CAUSE AND PREJUDICE, OR A FUNDAMENTAL MISCARRIAGE OF JUSTICE, TO EXCUSE A PROCEDURAL DEFAULT

**1.     Standard of Law**

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that

**MEMORANDUM DECISION AND ORDER - 23**

the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**2.      Discussion**

Petitioner asserts that his state court appointed trial counsel's deficiencies and ineffectiveness amount to the cause that should excuse the default of his claims. He contends that his trial counsel failed to "advise himself of relevant law and [act] accordingly." (Dkt. 62, p. 9.)

A criminal defendant ordinarily bears the risk of attorney error, and "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Generally, only a violation of the defendant's constitutional right to the effective assistance of counsel will be attributable to the state and may serve as cause to excuse the default of another constitutional claim. *Id*. at 488-89. In addition, where a petitioner points to an instance of ineffective assistance of counsel in a proceeding at which he has a constitutional right to counsel, he cannot rely on that instance to show cause for a default unless he has first exhausted that particular ineffective assistance of counsel claim in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

In this case, Respondent does not claim that any of Petitioner's ineffective assistance of trial counsel claims in the Amended Petition (Claim Four) are procedurally

**MEMORANDUM DECISION AND ORDER - 24**

barred, so under *Edwards* they could serve as cause to excuse the default of other claims. But none of the allegations in Claim Four are predicated upon trial counsel's failure to raise and exhaust some *other* current claim from the Amended Petition that *is* procedurally default. In other words, there is no causal connection between a raised ineffective assistance of counsel claim and the default of another claim in the Amended Petition.

However, Petitioner did exhaust one additional claim of ineffective assistance of trial counsel in the state post-conviction matter that does relate to an underlying defaulted claim. Specifically, Petitioner argued in the post-conviction action that his trial counsel was ineffective in failing to file a motion to suppress based on the State's use of James Burt as an agent to elicit incriminating statements from Petitioner, violating the *Massiah* doctrine. (State's Lodging J-7, pp. 10-15.) Because the ineffective assistance claim based on trial counsel's handling of the *Massiah* issue was exhausted, it could serve as the cause to excuse Petitioner's failure to develop the substantive *Massiah* claim properly (Claim Three (A)), and the Court will not dismiss Claim Three (A) at this time. Whether cause and prejudice can be shown to overcome the default will likely turn on the merit of the underlying issue, and the Court will await further pleadings before addressing the claim.

It does not appear that Petitioner places the blame on his *post-conviction* counsel for not properly exhausting claims. In any event, a petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d

**MEMORANDUM DECISION AND ORDER - 25**

425, 430 (9th Cir. 1993). As a result, a petitioner can not argue that his counsel's errors during the post-conviction action serve as a basis to excuse the procedural default of his claims. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 752 (1991). There is a limited exception to this rule to overcome the default of ineffective assistance of *trial counsel* claims, *see Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), but Respondent does not seek dismissal of Petitioner's ineffective assistance of trial counsel claims from the Amended Petition. The *Martinez* exception therefore has no applicability to the cause and prejudice issue before the Court.

Finally, Petitioner contends that the procedural default of his claims should be disregarded because he is actually innocent of the crime. (Dkt. 62, p. 11.) It is true that a compelling showing of actual innocence can satisfy the fundamental miscarriage of justice exception to procedural default, allowing a court to review otherwise defaulted claims on their merits. *Schlup v. Delo*, 513 U.S. 298, 315, 324 (1995). But to establish such a claim, a petitioner must come forward with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner bears the burden of demonstrating that "in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 539 (2006).

**MEMORANDUM DECISION AND ORDER - 26**

Petitioner has not come forward with new reliable evidence that would satisfy this demanding standard. He instead alleges in a conclusory manner that witnesses lied and conspired to convict him, and he re-hashes what he perceives to be the thinness of the evidence presented at the criminal trial to link him to the methamphetamine operation. A habeas proceeding is not a proper forum in which to re-litigate the case that has already been tried. "When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict." *House v. Bell*, 547 U.S. at 539. A persuasive claim of actual innocence must be based on *new* evidence that was not presented to the jury that is so compelling that the reviewing court must conclude that it is now probable that no rational juror would vote to convict the defendant. *See id.* at 538-39. Petitioner has not offered that type of evidence, and based on the current showing, the miscarriage of justice exception does not apply.

## ORDER

**IT IS ORDERED:**

1.   Respondent's Motion for Partial Summary Dismissal (Dkt. 55) is GRANTED in part and DENIED in part. Claims One, Two, Three (B), and Five are DISMISSED with prejudice. Claim Three (A) and (C), Claim Four, and Claim Six are not dismissed.

2.   Respondent shall file an answer to the remaining claims **within 60 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the

**MEMORANDUM DECISION AND ORDER - 27**

remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

3. No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

4. No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED: **September 26, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 28**